**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| **ROBBIE RILEY Individually and as** | § | |
| **Representative of the Estate of** | § | |
| **JAMES EUGENE RILEY JR.** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO. 17:17-cv-223** |
| | § | |
| **CORE DISTRIBUTION, INC.** | § | |
| **AMAZON.COM, INC.,** | § | |
| **AMAZON.COM, LLC.,** | § | |
| **Defendants.** | | |

<u>**PLAINTIFF'S FIRST AMENDED COMPLAINT**</u>

**COMES NOW**, Plaintiff Robbie Riley Individually and as Representative of the Estate of James Eugene Riley, Jr. and files this her Plaintiff's First Amended Complaint complaining of Defendants Core Distribution, Inc., (hereinafter "CDI"), Amazon.com, Inc. and Amazon.com, LLC (collectively "Amazon.com" or "Amazon"), with all of the aforementioned defendants referred to herein as the "Defendants," and for cause of action show:

**PARTIES**

1.      Plaintiff is a resident of Hidalgo County, Texas.

2.      Defendant Core Distribution, Inc. (hereinafter CDI) is a corporation organized under the laws of the State of Minnesota.  CDI has been served with complaint and summons and has filed an answer.

3.      Defendant Amazon.com, Inc. is a corporation organized under the laws of the State of Delaware.  Amazon.com has been served with complaint and summons and has filed an answer.

4.      Defendant Amazon.com LLC is a limited liability company organized and existing under the laws of the State of Delaware. Amazon.com LLC has been served with complaint and

summons and has filed an answer. Hereinafter, Amazon.com and Amazon.com LLC shall be collectively referred to as "Amazon".

## JURISDICTION AND VENUE

5.     Plaintiff Riley denies that this Court has jurisdiction over the instant lawsuit, be it diversity jurisdiction or otherwise, since Plaintiff has made no claims invoking federal question jurisdiction and Plaintiff initially sued two Defendants, Taylor and Hurt, that are citizens of Texas.  Plaintiff Riley further denies that Defendants Taylor and Hurt were improperly joined. See Plaintiff's Motion to Remand on file with the Court and adopted and incorporated herein by reference.  The Court has ruled that it has jurisdiction over the instant action under diversity jurisdiction under 28 U.S.C. Sec. 1332 since the Defendants that are citizens of Texas, Defendants Taylor and Hurt, were improperly joined and thus ignored for purposes of determining diversity jurisdiction.  As it stands now, Defendants are diverse parties that are citizens of States other than Texas. Plaintiff seeks damages against Defendants in excess of $75,000.00.

6.     Venue is proper in this district under 28 U.S.C. Sec. 1391(b)(2) since a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

## FACTS

7.     At all times relevant hereto, CDI designed, manufactured, assembled, supplied, distributed, marketed and sold telescoping ladders including but not limited to CDI's Model Professional Series 785P 15.5 foot telescoping ladder.  At all times relevant hereto, Amazon supplied, distributed, marketed, advertised,  and sold CDI's telescoping ladders Model Pro Series 785P on its internet website "Amazon.com" accessible to the residents and citizens of the State of Texas including Decedent Riley.

8.      During 2015 the Decedent Riley, accessed Amazon.com via his computer to shop for a ladder to be utilized in his business Valley Wide Restoration, Inc.  The Decedent looked at various ladders that were listed for sale by Amazon.com on its website. Thereafter, Decedent Riley read various statements contained upon the Amazon.com website for a ladder made by CDI.  Decedent Riley then reviewed the photographs and statements made on Amazon's website for CDI's Model Pro Series 785P telescoping ladder that opens by the foot to a maximum height of 15.5 feet.  The statements made by Amazon's website concerning CDI's Model Pro Series 785P telescoping ladder were as follows: the ladder features heavy-duty construction; is designed to hold up to professional use; is OSHA and ANSI approved; features rugged aerospace engineered 6061 aluminum alloy construction; nonslip end caps that help keep it firmly in place; designed for both commercial contractors and home do it yourselfers, is a sensible alternative to traditional bulky extension ladders; durable; heavy duty ladder; ergonomic design; and locking tabs for smooth safe operation; with larger duty ratings than the original Xtend & Climb ladders, the Professional Edition ladders can withstand even the most demanding jobs.  Alternatively, CDI made affirmative statements and claims about its Model Pro Series 785P telescoping ladder on Amazon's website as follows: the ladder features heavy-duty construction; is designed to hold up to professional use; is OSHA and ANSI approved; features rugged aerospace engineered 6061 aluminum alloy construction; nonslip end caps that help keep it firmly in place; designed for both commercial contractors and home do it yourselfers, is a sensible alternative to traditional bulky extension ladders; durable; heavy duty ladder; ergonomic design; and locking tabs for smooth safe operation; with larger duty ratings than the original Xtend & Climb ladders, the Professional Edition ladders can withstand even the most demanding jobs.

9.  After reviewing Amazon's advertisement, photos and information concerning CDI's Model

Pro Series 785P telescoping ladder, Decedent Riley purchased said ladder from Amazon's website from his computer located in Hidalgo County, Texas. As part of the purchase and agreement with Amazon, the subject ladder would be shipped to Decedent's business address in Hidalgo County, Texas. Thereafter, CDI's Model Pro Series 785P telescoping ladder was received by Decedent Riley in Hidalgo County Texas and put to use in Decedent's Riley's business operations with Valley Wide Restoration, Inc.

10. Prior to April 12, 2017, Valley Wide Restoration, Inc. was contacted by Nationwide to perform a "ladder assist" for Nationwide in connection with Nationwide's inspection of a house located at 3021 Jefferson Avenue, McAllen Texas. In particular, Valley Wide Restoration, Inc. was to assist two Nationwide adjusters, Rachel Taylor and Robin Hurt, in those adjustors' effort to inspect the roof of said home in connection with an insurance claim investigation by Nationwide. Decedent Riley was the employee of Valley Wide Restoration, Inc. that responded to Nationwide's call for the ladder assist and scheduled the "ladder assist" for April 12, 2017.

11. On April 12, 2017, Decedent Riley arrived at the home located at 3021 Jefferson Avenue, McAllen Texas to perform the "ladder assist" for Nationwide insurance adjusters Taylor and Hurt. Decedent Riley was to ascend to a particular section of the roof to observe and photograph the particular areas of the roof. Decedent Riley, used CDI's Model Pro Series 785P telescoping ladder to perform the "ladder assist". At all times relevant hereto, Decedent Riley used the subject ladder as per the instructions and in the manner intended.

12. While Decedent was on the ladder, the alleged locking tabs on the telescoping ladder gave way and collapsed the ladder in one or two or three or three of four telescoping compartments. As a result of the ladder tabs giving way, Decedent Riley lost his balance on the ladder and fell to the ground and sustained severe injuries, including to his head, that caused his untimely death.

Alternatively, while Decedent Riley was on the ladder, the alleged non-slip end caps to the ladder which are at the bottom of the ladder that touch the ground, tore and/or slipped causing the ladder to move which in turn caused Decedent Riley to lose his balance on the ladder, fall to the ground where he sustained severe injuries that caused his untimely death.

**VICARIOUS LIABILITY**

13.     At all times relevant hereto Plaintiff asserts respondeat superior liability against each of the Defendants for that the acts and omissions committed by the employees and agents of each of the Defendants within their respective scope of employment and agency with Defendants.

**SURVIVAL ACTION**

14.     Plaintiff Robbie Riley is the spouse, heir and representative of the Estate of James Eugene Riley Jr and Plaintiff is entitled to bring this survival action pursuant to Texas Civil Practice and Remedies Code Section 71.021.  Plaintiff brings the following survival claims and causes of action against Defendants as stated herein.  Defendants' respective tortious acts and omissions proximately caused Decedent Riley's severe physical injuries that Decedent Riley sustained prior to his death.  Prior to his death, Decedent Riley had viable personal injury claims and causes of action against the Defendants.  Decedent Riley would have been entitled to bring an action for the personal injuries he sustained in the incident made the basis of this lawsuit, if he had lived.

15.     Accordingly, Plaintiff as spouse, heir and representative of the Estate of James Eugene Riley Jr sues and makes survival claims including on behalf of said Estate against Defendants for Decedent Riley's medical expenses; pain and suffering; mental anguish; funeral expenses; exemplary damages; court costs and prejudgment and post judgment interest.

**WRONGFUL DEATH**

16.    Plaintiff Robbie Riley is the spouse of the deceased Decedent Riley and is entitled to bring this wrongful death action pursuant to Texas Civil Practice and Remedies Code Section 71.001, et seq. Plaintiff brings the following wrongful death claims and causes of action against Defendants as stated herein.   Defendants' respective tortious acts and omissions proximately caused Decedent Riley's severe physical injuries and death. Each of said tortious acts and omissions (including those described throughout this pleading) constitutes a wrongful act and/or constitutes neglect, and/or carelessness, and/or unskillfulness, and/or default by each of the Defendants. Decedent Riley would have been entitled to bring an action against Defendants for his injuries, if he had lived.  Plaintiff sustained actual injuries as a result of the incident made the basis of this lawsuit.

17.    Accordingly, Plaintiff Robbie Riley sues and makes claims against Defendants for the wrongful death of Decedent Riley as stated herein and makes claims against Defendants for loss of services; loss of earnings; future support; advice, care maintenance, mental anguish in the past and future; loss of companionship and society; loss of consortium; court costs and prejudgment and post judgment interest. As a further result of the nature and the consequences of their injuries, Plaintiff has suffered great mental and emotional pain, suffering, and anguish, and in all reasonable probability Plaintiff will continue to suffer in this manner for a long time into the future, if not for the balance of her natural life.

**STRICT LIABILITY - CDI**

18.    At all times relevant hereto, Defendant CDI sold and placed in the stream of commerce CDI's Model Pro Series 785P telescoping ladder in a defective condition (as set forth below) that was unreasonably dangerous to the users and consumers of CDI's Model Pro Series 785P

telescoping ladder. Defendant CDI was engaged in the business of selling telescoping ladders to the public including but not limited to CDI's Model Pro Series 785P telescoping ladder for use. CDI's Model Pro Series 785P telescoping ladder was expected to and did reach the user, in this case Decedent Riley, without substantial change in the condition in which it is sold.   The defective condition (as set forth below) of CDI's Model Pro Series 785P telescoping ladder caused the injuries and death sustained by Decedent Riley.

**Design Defects:**

19.     Defendant CDI defectively designed CDI's Model Pro Series 785P telescoping ladder including the subject ladder utilized by Decedent Riley leading to his injuries and death.   Such defects include but are not limited to the following:

1.  The ladder lacks appropriate feet to stabilize the ladder when in use;

2.  The ladder lacks the adjustable footing such that the entire foot surface is flush against the ground when the ladder is in use;

3.  The ladder was not designed with adequate contact points with the ground;

4.  The ladder lacks an appropriate design that is available and in use in other ladders to provide that the entire foot of the ladder is in flush contact with the ground;

5.  The ladder was designed without adjustable feet to permit proper traction with the ground surface;

6.  The ladder was not designed with adequate contact points to support the normal weight that the ladder is designed to hold because only a portion of the feet is in contact with the ground on the floor;

7.  The ladder is designed in a way that both sides of the ladder can be used which permits the feet of the ladder to be slightly elevated off of the ground to permit and facilitate the instability of the ladder;

8.  The ladders telescoping handles and clips do not adequately secure the ladder and do not prevent the ladder from collapsing (in whole or part);

9.  The 785P telescoping ladder does not have adequate protection to prevent it from slipping and falling over;

10. The 785P telescoping ladder is unstable when the ladder is fully extended;

11. The ladder's foot surface is too hard and rigid to provide proper grip / friction;

12. The base of the ladder does not provide adequate grip and friction to hold it on the flat floor surface;

13. Defects and/or damage (e.g., corrosion) to the rung latch locking mechanism(s), which damage / defects occurred while the ladder was under CDI's control and/or during manufacturing.

14. As to the design, lack of clearly visible locking indicators on the slide levers created a condition such that the failure of the rung latch(s) to properly lock were unlikely to be perceived by the user (here, the Decedent Riley) of the ladder.

15.   The soft plastic covering to the feet of the ladder wear down and tear too easily thereby causing the hard plastic surface of the feet (which is under the soft plastic covering) to make contact with a floor surface resulting in a condition prone to causing the ladder to slip and slide under normal use and when the ladder is used as intended or instructed by CDI.

16. There are no grooves or grip to the hard plastic surface underneath the soft plastic "shoes" to the ladder's feet that would provide secondary grip to surfaces should the soft plastic feet erode, tear or wear down.

17. With respect to the soft plastic "shoes," the shoes are comprised of a material with inadequate abrasion resistance, inadequate wear resistance, and inadequate traction capabilities, such that the material utilized fails to sufficiently prevent the plastic feet from eroding, tearing or wearing down, and fails to provide the traction needed to prevent the ladder from slipping.

18. With respect to the soft plastic "shoes," an inadequate tread pattern was utilized with an inferior element geometry that provides inadequate traction and allows for increased treadwear. The tread pattern utilized has the improper rib, lug and groove location, depth, size, shape, density and proximity to one another, for this particular application.

19. There are no wear indicators beneath the soft plastic shoes to the ladder's feet that would alert the user of the ladder, that the shoes to the ladder should be replaced.  The wear indicator would be a brightly colored material underneath the dark colored soft plastic shoes to the ladder, so when the shoes of the ladder become worn and/or torn, the bright color would appear indicting to the user that the shoes to the ladder should be replaced.

20.   There was a safer alternative design to the design of the feet to CDI's Model Pro Series

785P telescoping ladder including but not limited to:

(1) the feet of the ladder at issue could have used movable and/or adjustable feet that conform to the surface that it stands upon rather than having static feet;

(2) the feet on the ladder could have been made without angled sides as is currently the case with the ladder;

(3) the ladder could have had larger feet to obtain more surface area upon the ground upon which its stands;

(4) The ladder could have included adjustable footing such that the entire foot surface is flush against the ground when the ladder is in use;

(5) The ladder could have included adequate contact points on its feet to make adequate contact with the ground;

(6) The ladder could have included a design that is available and in use in other ladders to provide that the entire foot of the ladder is in contact with the flat ground;

(7) The ladder could have included adjustable feet to permit proper traction with the flat ground surface;

(8) The ladder could have included adequate contact points with the ground to support normal weight a ladder is designed that only a portion of the feet are in contact with the flat ground on the floor;

(9) The ladder could have included clips to adequately secure the ladder and prevent the ladder from collapsing (in whole or part);

(10) The ladder could have included protection like kick stands that elongate on the sides of the ladder that prevent it from slipping and falling over;

(11) The ladder could have included feet with softer surfaces and with more grip to provide proper friction and contact with ground surfaces;

(12) The ladder could have included a base that provides adequate friction to hold it on the flat floor surface;

(13) The ladder could have included corrosion protection to the rung latch locking mechanism(s), while the ladder was under CDI's control and/or during manufacturing;

(14) The ladder could have included clearly visible locking indicators on the slide levers so that the users of the ladder can perceive that the locking mechanism is in the locked or unlocked position;

(15) The ladder could have included a more wear resistant soft plastic covering to the feet of the ladder which would prohibit the soft plastic feet from wearing down and tearing too easily;

(16)  The ladder could have included grooves or grip to the hard plastic surface underneath the soft plastic "shoes" to the ladder's feet that would provide secondary grip to surfaces should the soft plastic feet erode, tear or wear down.

(17) The ladder could have included "shoes," to the ladder that are comprised of a material with adequate abrasion resistance, adequate wear resistance, and adequate traction capabilities, such that the material would sufficiently prevent the plastic feet from eroding, tearing or wearing down, and provides the traction needed to prevent the ladder from slipping.

(18)  The ladder could have included "shoes," to the ladder that had an adequate tread pattern that provides adequate traction and allows for increased treadwear. The ladder could have included a tread pattern that has the proper rib, lug and groove location, depth, size, shape, density and proximity to one another, for the ladder's particular application.

(19)  The ladder could have included wear indicators beneath the soft plastic shoes to the ladder's feet that would alert the user of the ladder, that the shoes to the ladder should be replaced.  The wear indicator would be a brightly colored material underneath the dark colored soft plastic shoes to the ladder, so when the shoes of the ladder become worn and/or torn, the bright color would appear indicating to the user that the shoes to the ladder should be replaced.

21.    Each of above described safer alternative designs or alternatively two or more of the above would have prevented or significantly reduced the risk of injury without substantially impairing the product's CDI's Model Pro Series 785P telescoping ladder's, utility.  Further, each of the above described safer alternative designs are and all collectively are both technologically and economically feasible when the product left the control of the manufacturer, CDI by the application of existing or reasonably achievable scientific knowledge. Many of the safer alternative design features stated above are utilized by ladders that compete with CDI's Model Pro Series 785P telescoping ladder and/or have been employed by CDI in other similar models of CDI's telescoping ladders line. The design defects identified above, either individually or collectively was the producing cause of Decedent Riley's injuries and death.  Further, Decedent Riley's injuries and death was directly and proximately caused by the design defects stated above in the Model Pro Series 785P telescoping ladder used by Decedent Riley.  Further, given the design defects as stated above, the gravity and likelihood of injury from the use of CDI's Model

Pro Series 785P telescoping ladder outweighs the utility of said ladder to the user and the public as a whole.  Prior to Decedent Riley's injury and death, there were available substitute products (substitute for Model Pro Series 785P telescoping ladder) that met the same need as Model Pro Series 785P telescoping ladder but not unsafe or unreasonably expensive. There are many competing telescoping ladders very similar to CDI's Model Pro Series 785P telescoping ladder that meet the same needs and are not unsafe or unreasonably expensive.  Alternatively, CDI designs and manufactures other ladders that met the same need as Model Pro Series 785P telescoping ladder but not unsafe or unreasonably expensive. CDI possesses the ability to eliminate the unsafe character of the Model Pro Series 785P telescoping ladder without seriously impairing its usefulness or significantly increasing its cost.  Alternatively, Decedent Riley knew how to use ladders by virtue of his work experience, was aware of the dangers inherent in any ladder and the Model Pro Series 785P telescoping ladder and was aware of how to avoid the inherent dangers of using a ladder.  However, there was no chance or way for Decedent Riley to avoid the design defect in CDI's Model Pro Series 785P telescoping ladder as stated above. Alternatively, the warnings and instructions for CDI's Model Pro Series 785P telescoping ladder were not suitable for the ladder and failed to warn Decedent Riley of the inherent dangers of CDI's Model Pro Series 785P telescoping ladder.  The expectation of the ordinary consumer, like Decedent Riley, was that the feet to the ladder should not be prone to slip, slide, tear or become unstable while in use.  Alternatively, the expectation of the ordinary consumer, like Decedent Riley, was that the alleged locking tabs on the telescoping ladder would not give way, fail or collapse while in use.

**Manufacturing Defect:**

22.     Defendant CDI defectively manufactured CDI's Model Pro Series 785P telescoping ladder including the particular ladder used by Decedent Riley leading to his death.   Said Model Pro Series 785P telescoping ladder was defectively manufactured in that the finished product, CDI's Model Pro Series 785P telescoping ladder, deviated in terms of its construction or quality, from the specifications or planned output in a manner that rendered CDI's Model Pro Series 785P telescoping ladder unreasonably dangerous.   CDI's Model Pro Series 785P telescoping ladder including the particular ladder used by Decedent Riley leading to his death was defective when it left the hands of CDI.  The feet to CDI's Model Pro Series 785P telescoping ladder were not made with the specified materials or proper grade of materials thereby making the feet to the ladder unreasonably dangerous in that the ladder feet are prone to slip, tear, wear down very easily, give way and/or slide.  The grade of the soft plastic shoes to the ladder that was used in the manufacturing process was not the identical grade of soft plastic which was specified by CDI.  The ladder's feet did not conform to CDI's own specifications and is not identical to its mass produced siblings.  With respect to the rung latch locking mechanism(s) of the ladder and/or with respect to locking indicators, the finished product, CDI's Model Pro Series 785P telescoping ladder deviated in terms of its construction or quality from the specifications or planned output in a manner that rendered Model Pro Series 785P telescoping ladder unreasonably dangerous.  The manufacturing defects identified above, was the producing cause of Decedent Riley's injuries and death.  Further, Decedent Riley's injuries and death was directly and proximately caused by the manufacturing defects in the Model Pro Series 785P telescoping ladder used by Decedent Riley.

**Marketing Defects:**

23.     A risk of harm inherently exits in CDI's Model Pro Series 785P telescoping ladder, the ladder is prone to slipping, sliding or becoming unstable while in use or alternatively regular intended use of the ladder causes the ladder to become prone to slipping, sliding or becoming unstable while in use.   Alternatively, a risk of harm may arise out from the intended, or reasonably anticipated use of, CDI's Model Pro Series 785P telescoping ladder, regular intended use of the ladder causes the ladder to become prone to slipping, sliding or becoming unstable while in use.  CDI reasonably foresaw the risk of harm at the time CDI's Model Pro Series 785P telescoping ladder was marketed. CDI's Model Pro Series 785P telescoping ladder possesses a marketing defect. The absence of the warning or instructions rendered CDI's Model Pro Series 785P telescoping ladder unreasonably dangerous to the ultimate user or consumer of the product, in this case Decedent Riley.  The failure to warn and/or instruct constitutes a causative nexus in the product user's injury, Decedent Riley's injury and death. Defendant CDI owed a duty to warn the users of CDI's Model Pro Series 785P telescoping ladder of the ladder's risk of slipping from its feet and that because there are no wear indicators on the feet to the ladder, particular attention should be given to the wear or tears on the "shoes" of the ladder.  Defendant CDI knew or should have known of the potential risk involving CDI's Model Pro Series 785P telescoping ladder's risk of slipping from its feet, but marketed and sold the ladder without adequate warning of the danger - risk of slipping from its feet or providing instructions for safe use and that because there are no wear indicators on the feet to the ladder, particular attention should be given to the wear or tears on the "shoes" of the ladder.  The lack of adequate warning or instruction for the ladder rendered the ladder unreasonably dangerous.  The ladder lacked an adequate warning including but not limited to: that the ladder's static feet could not adjust to uneven surfaces, the

ladder's instability when placed upon uneven or angled ground, and that if the soft plastic feet to the ladder have any wear down the soft plastic feet should be replaced to provide the appropriate and safe grip to floor / ground surfaces and that because there are no wear indicators on the feet to the ladder particular attention should be given to the wear or tears on the "shoes" of the ladder, regular intended use of the ladder causes the ladder to become prone to slipping, sliding or becoming unstable while in use.  The failure to warn or provide instructions for safe use of the ladder identified above, was the producing cause of Decedent Riley's injuries and death. Further, Decedent Riley's injuries and death was directly and proximately caused by Defendant CDI's failure to warn or provide instructions for safe use of the ladder.

24.   Additionally, Defendant CDI owed a duty to warn the users to inspect the condition of the rubber caps attached to the feet and failed to specify replacement of the rubber caps when they were worn down or alternatively regular intended use of the ladder causes the ladder to become prone to slipping, sliding or becoming unstable while in use. The ladder's label should instruct the user to turn the ladder on its side before every use to inspect the rubber feet caps for wear. Defendant CDI knew or should have known of the potential risk involving CDI's Model Pro Series 785P telescoping ladder's risk of slipping from its feet due to worn-down rubber caps, but marketed and sold the ladder without adequate warning of said danger - risk of slipping from its feet due to failure to periodically inspect / replace the rubber caps. The ladder lacked an adequate warning including but not limited to: failure to periodically inspect and replace the rubber caps can result in serious injury or death. Said failure to warn or provide instructions for safe use of the ladder was the producing cause of Decedent Riley's injuries and death.  Further, Decedent Riley's injuries and death was directly and proximately caused by Defendant CDI's failure said warn or provide instructions for safe use of the ladder.

25.   Another marketing defect is that CDI marketed the subject ladder as having "non-slip end caps." Defendant CDI owed a duty to not misrepresent that the end caps are "non-slip." The ladder's marketing materials, instructions, and label should have instructed the user that the caps are capable of slipping. Defendant CDI knew or should have known of the potential risk involving CDI's Model Pro Series 785P telescoping ladder's risk of slipping from its and yet sold the ladder without an incorrect representation that the end caps are non-slip. Said representation was made either directly by CDI to Decedent Riley or made by CDI to Amazon with awareness that Amazon was publishing this "non-slip" representation in its marketing of the subject ladder. Said misrepresentation in marketing materials was the producing cause of Decedent Riley's injuries and death.  Further, Decedent Riley's injuries and death was directly and proximately caused by said misrepresentation.

### NEGLIGENCE – CDI

26.   Defendant CDI owed a duty of reasonable care to its consumers like Decedent Riley to design, manufacture, and market CDI's Model Pro Series 785P telescoping ladder.  Defendant breached its duty of reasonable care when it defectively designed, marketed and manufactured CDI's Model Pro Series 785P telescoping ladder. Decedent Riley's injuries and death was directly and proximately caused by the negligence of the Defendant CDI in designing, manufacturing, and marketing and the Model Pro Series 785P telescoping ladder as stated above in paragraphs 21-28 adopted and incorporated herein by reference and as follows:

1.   The ladder lacks appropriate feet to stabilize the ladder when in use;

2.   The ladder lacks the adjustable footing such that the entire foot surface is flush against the ground when the ladder is in use;

3.   The ladder was not designed with adequate contact points with the ground;

4. The ladder lacks an appropriate design that is available and in use in other ladders to provide that the entire foot of the ladder is in contact with the flat ground;

5. The ladder was designed without adjustable feet to permit proper traction with the flat ground surface;

6. The ladder was not designed with adequate contact points to support normal weight a ladder is designed that only a portion of the feet are in contact with the flat ground on the floor;

7. The ladder is designed in a way that both sides of the ladder can be used which permits the feet of the ladder to be slightly elevated off of the ground to permit and facilitate the instability of the ladder;

8. The ladders telescoping handles and clips do not adequately secure the ladder;

9. The 785P telescoping ladder does not have adequate protection from prevent it from slipping and falling over;

10. The 785P telescoping ladder is unstable when the ladder is fully extended;

11. The ladder's foot surface is too hard and rigid to provide proper friction;

12. The base of the ladder does not provide adequate friction to hold it on the flat floor surface;

13. The 785P telescoping ladder is a dangerous product placed into the stream of commerce;

14. CDI failed to discover, identify, acknowledge, disclose to foreseeable users and correct the aforementioned defects;

15. CDI failed to design, manufacture, assemble, supply, distribute and sell a safe ladder as stated herein thereby placing users at risk for injury;

16. CDI failed to warn its consumers of the instability of the ladder;

17. Defects and/or damage (e.g., corrosion) to the rung latch locking mechanism(s), which damage / defects occurred while the ladder was under CDI's control and/or during manufacturing.

18. As to the design, lack of clearly visible locking indicators on the slide levers created a condition such that the failure of the rung latch(s) to properly lock were unlikely to be perceived by the user (here, the Decedent Riley) of the ladder.

19.   The soft plastic covering to the feet of the ladder wear down and tear too easily thereby causing the hard plastic surface of the feet (which is under the soft plastic covering) to make contact with a floor surface resulting in a condition prone to causing the ladder to slip and slide under normal use and when the ladder is used as intended or instructed by CDI.

20.   There are no grooves or grip to the hard plastic surface underneath the soft plastic "shoes" to the ladder's feet that would provide secondary grip to surfaces should the soft plastic feet erode, tear or wear down.

27.   Defendant CDI knew, or in the exercise of ordinary care should have known that the Model Pro Series 785P telescoping ladder in question was defectively designed, manufactured and marketed as described above.  At the time of the design of the of the Model Pro Series 785P telescoping ladder at issue, there existed a safer alternative design including but not limited to: the feet of the ladder at issue could have used movable and/or adjustable feet that conform to the surface that it stands upon rather than having static feet and larger feet to obtain more surface area upon the ground upon which its stands.  Further, the of the Model Pro Series 785P telescoping ladder in question deviated from its planned specifications in manufacturing which rendered said ladder defective and unreasonably dangerous.  Further, the ladder lacked an adequate warning in that the ladder failed to warn of, including but not limited to: that the ladder's static feet could not adjust to uneven surfaces, the ladder's instability when placed upon uneven or angled ground, and that if the soft plastic feet to the ladder have any wear down the soft plastic feet should be replaced to provide the appropriate and safe grip to floor / ground surfaces and that because there are no wear indicators on the feet to the ladder particular attention should be given to the wear or tears on the "shoes" of the ladder, regular intended use of the ladder causes the ladder to become prone to slipping, sliding or becoming unstable while in use.  The acts and/or omissions of Defendant CDI described above was a proximate result, substantial factor and producing cause of Decedent Riley's injuries and death.

17

**Breach of Warranty – CDI**

28.      Defendant CDI is liable to Plaintiff / Decedent Riley under the Texas Deceptive Trade Practices Act.  Tex. Bus. & Comm. Code Sec. 17 et. seq.  Decedent Riley was a consumer as he sought to purchase goods, in this case CDI's Model Pro Series 785P telescoping ladder. Defendant CDI committed one or more of the following wrongful acts: (1) representing that CDI's Model Pro Series 785P telescoping ladder had sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities it does not have; (2) representing that CDI's Model Pro Series 785P telescoping ladder was of a particular standard, quality, or grade, or that CDI's Model Pro Series 785P telescoping ladder was of a particular style or model when it was not; (3) CDI failed to disclose information about the CDI's Model Pro Series 785P telescoping ladder that was known at the time of the transaction when the failure to disclose was intended to induce the consumer, Decedent Riley to enter a transaction that the consumer, Decedent Riley would not have entered into if the information had been disclosed. CDI made affirmative representations that CDI's Model Pro Series 785P telescoping ladder had the following characteristics and qualities:  the ladder features heavy-duty construction; is designed to hold up to professional use; is OSHA and ANSI approved; features rugged aerospace engineered 6061 aluminum alloy construction; nonslip end caps that help keep it firmly in place; designed for both commercial contractors and home do it yourselfers, is a sensible alternative to traditional bulky extension ladders; durable; heavy duty ladder; ergonomic design; and locking tabs for smooth safe operation; with larger duty ratings than the original Xtend & Climb ladders, the Professional Edition ladders can withstand even the most demanding jobs.  CDI's Model Pro Series 785P telescoping ladder did not have the above described characteristics and qualities since  CDI's Model Pro Series 785P telescoping

ladder was defectively designed, manufactured and marketed as described in paragraphs 21-30 adopted and incorporated herein by reference. Additionally, CDI breached its express and implied warranties to Plaintiff / Decedent Riley as stated below.

29.  Express Warranty - Defendant CDI breached its express warranty to Plaintiff / Decedent Riley. Defendant CDI made affirmative statements of fact and promises to Decedent Riley or alternatively provided a description of the Model Pro Series 785P telescoping ladder that related to CDI's Model Pro Series 785P telescoping ladder as follows: the ladder features heavy-duty construction; is designed to hold up to professional use; is OSHA and ANSI approved; features rugged aerospace engineered 6061 aluminum alloy construction; nonslip end caps that help keep it firmly in place; designed for both commercial contractors and home do it yourselfers, is a sensible alternative to traditional bulky extension ladders; durable; heavy duty ladder; ergonomic design; and locking tabs for smooth safe operation; with larger duty ratings than the original Xtend & Climb ladders, the Professional Edition ladders can withstand even the most demanding jobs.  These descriptions and affirmative statements of fact and promises became part of the basis of the bargain between CDI and Decedent Riley. These above described acts by CDI created an express warranty that CDI's Model Pro Series 785P telescoping ladder shall conform to the above descriptions, affirmations and promises.  CDI breached its warranty to Decedent Riley because CDI's Model Pro Series 785P telescoping ladder did not conform to the above descriptions, affirmations and promises.  As a direct and proximate result of the breaches, Decedent Riley sustained injuries and death.

30.  Implied Warranty - Defendant CDI breached its implied warranty of merchantability to Plaintiff / Decedent Riley.  Decedent Riley had a unique purpose for buying CDI's Model

Pro Series 785P telescoping ladder in that Riley would use the ladder in his employment to conduct inspections of homes for construction and home repair work. CDI had reason to know of Decedent Riley's particular purpose of purchasing the CDI's Model Pro Series 785P telescoping ladder since CDI describes and markets its CDI's Model Pro Series 785P telescoping ladder as possessing the following traits and characteristics: the ladder features heavy-duty construction; is designed to hold up to professional use; is OSHA and ANSI approved; features rugged aerospace engineered 6061 aluminum alloy construction; nonslip end caps that help keep it firmly in place; designed for both commercial contractors and home do it yourselfers, is a sensible alternative to traditional bulky extension ladders; durable; heavy duty ladder; ergonomic design; and locking tabs for smooth safe operation; with larger duty ratings than the original Xtend & Climb ladders, the Professional Edition ladders can withstand even the most demanding jobs. Decedent Riley relied upon CDI's judgment. CDI breached its warranty to Decedent Riley because CDI's Model Pro Series 785P telescoping ladder was defective, did not conform to the above descriptions and was not fit for the particular purpose that Decedent Riley purchased the ladder to serve. As a direct and proximate result of the breaches, Decedent Riley sustained injuries and death.

**NEGLIGENCE – AMAZON**

31.    Defendant Amazon owed a duty of reasonable care to its consumers like Decedent Riley. Defendant Amazon owed a duty to market and advertise CDI's  Model Pro Series 785P telescoping ladder with reasonable care to its consumers like Decedent Riley. Defendant breached its duty of reasonable care when it marketed and advertised and placed into the stream of commerce the Model Pro Series 785P telescoping ladder which was unreasonably dangerous as described in paragraphs 21-30 adopted and incorporated herein by reference.  Amazon, on its

website, negligently represented that CDI's Model Pro Series 785P telescoping ladder had the following characteristics: the ladder features heavy-duty construction; is designed to hold up to professional use; is OSHA and ANSI approved; features rugged aerospace engineered 6061 aluminum alloy construction; nonslip end caps that help keep it firmly in place; designed for both commercial contractors and home do it yourselfers, is a sensible alternative to traditional bulky extension ladders; durable; heavy duty ladder; ergonomic design; and locking tabs for smooth safe operation; with larger duty ratings than the original Xtend & Climb ladders, the Professional Edition ladders can withstand even the most demanding jobs.  Amazon breached its duties to market and advertise the Model Pro Series 785P telescoping ladder when such representations were false.  Decedent Riley justifiably relied upon Amazon's representations. Decedent Riley's injuries and death was directly and proximately caused by the negligence of the Defendant Amazon in making the above representations and supplying, distributing, selling marketing, advertising and placing into the stream of commerce the Model Pro Series 785P telescoping ladder.

32.   Alternatively, Amazon exercised substantial control over the content of the warnings and instructions regarding the Model Pro Series 785P telescoping ladder. The warnings and instructions were inadequate.  Decedent Riley's injury and death was a producing and proximate cause of Riley's injuries and death.  Amazon failed to warn its consumers of the instability and aforementioned defects of the subject ladder as stated above and adopted and incorporated herein by reference.   Amazon failed to discover, identify, acknowledge, disclose and warn to foreseeable users and correct the aforementioned defects.   The warnings and instructions were inadequate or were not provided to Decedent Riley and Decedent Riley's injuries and death resulted from the inadequacy of the warning and instructions.

33.     Alternatively, Amazon made express factual representations about the aspects of the Model Pro Series 785P telescoping ladder to wit: the ladder features heavy-duty construction; is designed to hold up to professional use; is OSHA and ANSI approved; features rugged aerospace engineered 6061 aluminum alloy construction; nonslip end caps that help keep it firmly in place; designed for both commercial contractors and home do it yourselfers, is a sensible alternative to traditional bulky extension ladders; durable; heavy duty ladder; ergonomic design; and locking tabs for smooth safe operation; with larger duty ratings than the original Xtend & Climb ladders, the Professional Edition ladders can withstand even the most demanding jobs. The aforementioned representations were incorrect.   Defendant CDI's Model Pro Series 785P telescoping ladder: did not feature heavy-duty construction; was not designed to hold up to professional use; did not feature rugged construction; did not have nonslip end caps; was not designed for commercial contractors;  was not durable; was not a heavy duty ladder; and did not have locking tabs for smooth safe operation; the Professional Edition ladders cannot and did not withstand even the most demanding jobs and did not operate safely.   Decedent Riley relied upon Amazon's representations in purchasing, obtaining and using the subject ladder.  If the aspects of the subject ladder had been as represented by Amazon, Decedent Riley would not have suffered harm or the same degree of harm, injuries and death.   If CDI's Model Pro Series 785P telescoping ladder had nonslip end caps the ladder Decedent Riley was using would not have slipped and caused Decedent Riley to fall and sustain injuries and death.    Amazon's express factual representations about the aspects of the Model Pro Series 785P telescoping ladder to the public and Decedent Riley, was the producing cause of Decedent Riley's injuries and death. Decedent Riley relied upon Amazon's representations about CDI's Model Pro Series 785P telescoping ladder to purchase and use the ladder.   Further, Decedent Riley's injuries and death

was directly and proximately caused by Defendant CDI's express factual representations about the aspects of the Model Pro Series 785P telescoping ladder.

34.     Plaintiff would further show that Defendant Amazon knew, or in the exercise of ordinary care should have known that the Model Pro Series 785P telescoping ladder in question was defectively designed and manufactured as described above.   The acts and/or omissions of Defendant Amazon described above was a proximate result, substantial factor and producing cause of Decedent Riley's injuries and death.

## DTPA (Breach of Warranty) – AMAZON

35.     Decedent Riley purchased CDI's Model Pro Series 785P telescoping ladder from Amazon's website.   Defendant Amazon is a corporation that can be sued under the Texas Deceptive Trade Practices Act (hereinafter DTPA).   Defendant Amazon is liable to Plaintiff / Decedent Riley under the Texas Deceptive Trade Practices Act.   Tex. Bus. & Comm. Code Sec. 17 et. seq.   Decedent Riley was a consumer as he sought to purchase goods, in this case CDI's Model Pro Series 785P telescoping ladder. Defendant Amazon committed one or more of the following wrongful acts: (1) representing that the Model Pro Series 785P telescoping ladder had sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities it does not have; (2) representing that the Model Pro Series 785P telescoping ladder was of a particular standard, quality, or grade, or that the Model Pro Series 785P telescoping ladder was of a particular style or model when it was not; (3) Amazon failed to disclose information about the   Model Pro Series 785P telescoping ladder that was known at the time of the transaction when the failure to disclose was intended to induce the consumer, Decedent Riley to enter a transaction that the consumer, Decedent Riley would not have entered into if the information had been disclosed.   Amazon made affirmative representations that the Model

Pro Series 785P telescoping ladder had the following characteristics and qualities:  the ladder features heavy-duty construction; is designed to hold up to professional use; is OSHA and ANSI approved; features rugged aerospace engineered 6061 aluminum alloy construction; nonslip end caps that help keep it firmly in place; designed for both commercial contractors and home do it yourselfers, is a sensible alternative to traditional bulky extension ladders; durable; heavy duty ladder; ergonomic design; and locking tabs for smooth safe operation; with larger duty ratings than the original Xtend & Climb ladders, the Professional Edition ladders can withstand even the most demanding jobs.   The Model Pro Series 785P telescoping ladder did not have the above described characteristics and qualities since the Model Pro Series 785P telescoping ladder was defectively designed, manufactured and marketed as described in paragraphs 21-30 adopted and incorporated herein by reference. Additionally, Amazon breached its express and implied warranties to Plaintiff / Decedent Riley as stated below.

36.   Express Warranty - Defendant Amazon breached its express warranty to Plaintiff / Decedent Riley. Defendant Amazon made affirmative statements of fact and promises to Decedent Riley or alternatively provided a description of the Model Pro Series 785P telescoping ladder that related to the Model Pro Series 785P telescoping ladder as follows: the ladder features heavy-duty construction; is designed to hold up to professional use; is OSHA and ANSI approved; features rugged aerospace engineered 6061 aluminum alloy construction; nonslip end caps that help keep it firmly in place; designed for both commercial contractors and home do it yourselfers, is a sensible alternative to traditional bulky extension ladders; durable; heavy duty ladder; ergonomic design; and locking tabs for smooth safe operation; with larger duty ratings than the original Xtend & Climb ladders, the Professional

24

Edition ladders can withstand even the most demanding jobs.  These descriptions and affirmative statements of fact and promises became part of the basis of the bargain between Amazon and Decedent Riley. These above described acts by Amazon created an express warranty that the Model Pro Series 785P telescoping ladder shall conform to the above descriptions, affirmations and promises.  Amazon breached its warranty to Decedent Riley because the Model Pro Series 785P telescoping ladder did not conform to the above descriptions, affirmations and promises.  As a direct and proximate result of the breaches, Decedent Riley sustained injuries and death.

37.  Implied Warranty - Defendant Amazon breached its implied warranty of merchantability to Plaintiff / Decedent Riley.  Decedent Riley had a unique purpose for buying the Model Pro Series 785P telescoping ladder in that Riley would use the ladder in his employment to conduct inspections of homes for construction and home repair work.  Amazon had reason to know of Decedent Riley's particular purpose of purchasing the Model Pro Series 785P telescoping ladder since Amazon describes and markets the Model Pro Series 785P telescoping ladder as possessing the following traits and characteristics: the ladder features heavy-duty construction; is designed to hold up to professional use; is OSHA and ANSI approved; features rugged aerospace engineered 6061 aluminum alloy construction; nonslip end caps that help keep it firmly in place; designed for both commercial contractors and home do it yourselfers, is a sensible alternative to traditional bulky extension ladders; durable; heavy duty ladder; ergonomic design; and locking tabs for smooth safe operation; with larger duty ratings than the original Xtend & Climb ladders, the Professional Edition ladders can withstand even the most demanding jobs.  Decedent Riley relied upon Amazon's judgment.  Amazon breached its warranty to Decedent Riley because the Model Pro Series

785P telescoping ladder was defective, did not conform to the above descriptions and was not fit for the particular purpose that Decedent Riley purchased the ladder to serve.  As a direct and proximate result of the breaches, Decedent Riley sustained injuries and death.

## EXEMPLARY DAMAGES

38.     The wrongful conduct of each Defendant, as set forth above, when viewed objectively from said Defendants' respective standpoints at the time it occurred, involved an extreme degree of risk considering the probability and magnitude of the potential harm to others; and said Defendants had actual, subjective awareness of the risk, but still proceeded with a conscious indifference to the rights, safety and welfare of others. In addition to the above bases, the entity defendants are *additionally* liable in exemplary damages because, regardless of whether the entities committed gross negligence in their own right, each of said entities  authorized and/or ratified its representative's / agent's / employees' misconduct (as described herein). Accordingly, Plaintiff sues Defendants for exemplary damages to be determined by the trier of fact.

## CONDITIONS PRECEDENT

39.     All conditions precedent to Plaintiff's claims have been performed or have occurred.

## JURY DEMAND

40.     Plaintiff hereby demands a trial by jury and tenders the appropriate fee with this petition.

## PRAYER FOR RELIEF

41.     WHEREFORE PREMISES CONSIDERED, Plaintiff Robbie Riley prays that Defendants be cited to appear and answer, and that on final trial, Plaintiff recover the following:

     1.     Judgment against Defendants for damages within the jurisdictional limits of the Court;

     2.     Prejudgment interest as provided by law;

3.      Post judgment interest as provided by law;

4.      Costs of suit;

5.      Medical expenses in the past;

6.      Loss of future support and earnings;

7.      Pain and suffering in the past and future;

8.      Mental anguish in the past and future;

9.      Loss of companionship and society;

10.     Loss of consortium;

11.     Loss of services;

12.     Funeral and burial expenses;

13.     Such other and further relief to which Plaintiff has requested herein and may be justly entitled.

Respectfully submitted,

By:     */s/ Carlos Escobar*
        Carlos Escobar
        State Bar No.  24025351
        Fed. ID No.: 25649
        2415 North 10th Street
        McAllen, Texas 78501
        (956) 682 5434
        (956) 683 1172 (fax)
        carlos@escobarlawfirm.com

        Co-Counsel:

        */s/ Antonio Villeda*
        Antonio Villeda
        avilleda@mybusinesslawyer.com
        State Bar No. 20585300
        Chris Cheatham
        ccheatham@mybusinesslawyer.com

27

State Bar No. 24053140
Mike D. Trevino
Texas Bar No. 24093280
mtrevino@mybusinesslawyer.com
6316 North 10th Street, Bldg. B
McAllen, Texas 78504
(956) 631-9100 Telephone
(956) 631-9146 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on known electronic filing users listed below via the automatic electronic filing notice system and by facsimile on January 15, 2018.  There are no parties to the instant action that are not electronic filing users.

Arthur K. Smith, III
Law Offices of Arthur K. Smith, PC
507 Prestige Circle
Allen, Texas 75002
***Attorney for Defendants Core Distribution, Inc. Amazon.com, Inc., and Amazon.com, LLC***

Antonio Villeda- avilleda@mybusinesslawyer.com
Chris Cheatham- ccheatham@mybusinesslawyer.com
Villeda Law Group
6316 North 10th Street, Bldg. B
McAllen, Texas 78504
***Attorneys for Plaintiff***

*/s/ Carlos Escobar*
Carlos Escobar